1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11   JASVEER SINGH; JESUS MIER; and
     TOMMIE PRUITT,
12                                      2:05-CV-0521-MCE-DAD
             Plaintiffs,
13
         v.                             MEMORANDUM AND ORDER
14
     YELLOW TRANSPORTATION, INC.
15   DBA YELLOW FREIGHT;
     INTERNATIONAL BROTHERHOOD OF
16   TEAMSTERS, LOCAL UNION #439,
     DANIEL DRAKE, ROGER PRICE,
17   FRANK VELLA and DOES 1 - 20,

18           Defendants.

19                          ----oo0oo----

20

21       In bringing the present action, Plaintiffs Jasveer Singh

22   ("Singh"), Jesus Mier ("Mier") and Tommie Pruitt ("Pruitt")

23   (collectively "Plaintiffs") allege that Defendant Yellow

24   Transportation, Inc. ("Yellow") subjected them to discrimination,

25   harassment, and retaliation in violation of their rights under 42

26   U.S.C. § 1981 and the California Fair Employment and Housing Act

27   ("FEHA"), California Government Code §§ 12900-12996.

28   ///

                                   1

Yellow now moves to dismiss Plaintiffs' claims or, in the alternative, for summary adjudication as to certain of those claims.[1]  For the reasons set forth below, summary judgment of Plaintiffs' claims in favor of Yellow is granted.

## BACKGROUND

As an initial matter, the Court notes that Plaintiffs failed to comply with the Eastern District's Local Rules regarding the submission of statements filed by a party opponent.  Plaintiffs submitted a single twenty-nine page Opposition to Yellow's concurrent Motions for Summary Judgment and a 197 page Statement of Undisputed Facts.  First, Plaintiffs' Opposition is in violation of this Court's Pretrial Scheduling Order in that it exceeds the page limit set forth therein.  Further, Plaintiffs' Statement of Facts is not only expansive in violation of Local Rule 56-260(b), it is also redundant in that it virtually duplicates declarations and witness statements that are largely objectionable.  Despite these intemperate violations of both a Court Order and local procedure, the Court has thoroughly reviewed Plaintiffs' submissions.  To the extent facts are stated herein, they are deemed undisputed.  *See* Plf.'s Stmt. of Undisp. Facts; Plf.'s Resp. to Def.'s Stmt. of Undisp. Facts.

---

[1]Yellow has filed three concurrent Motions for Summary Judgment, or in the alternative, Summary Adjudication of Plaintiffs' claims which are opposed through a single Opposition filed jointly by Plaintiffs.  The three Motions address the claims lodged by each Plaintiff individually but are strikingly similar in substance.  In the interest of comity and judicial efficiency, the Court shall herein dispose of all three Motions.

1    Yellow Transportation is a provider of motor carrier
2    transportation services throughout North America and abroad.
3    Plaintiff Jesus Mier was hired by Yellow Transportation in
4    November 1997.  Plaintiffs Singh and Pruitt were both hired by
5    Yellow in 2002.  All three Plaintiffs are long time members of
6    the International Brotherhood of Teamsters (the "Union") and the
7    terms and conditions of their employment are governed by the
8    Collective Bargaining Agreement ("CBA") between the Union and
9    Yellow.  At all times relevant, Plaintiffs worked as dockworkers
10   at Yellow's Tracy, California facility.
11   Plaintiffs allege that they were severely harassed by other
12   dock workers significantly impairing the conditions of their
13   employment.  Plaintiffs further assert that knowledge of that
14   harassment should be imputed to Yellow by virtue of the pervasive
15   nature of the harassment.  Conversely, Defendants contend they
16   were unaware of the racial nature of the problem given Plaintiffs
17   complete failure to alert them to the issue.  It is undisputed
18   that the first formal complaint involving claims of unlawful
19   harassment was lodged with Yellow management in September 2003.
20   This first formal complaint resulted from the following
21   incident occurring on September 7, 2003.  After completing his
22   midnight shift, Singh proceeded to the parking lot where he
23   noticed that two or three lug nuts were missing or loosened on
24   his vehicle's front wheels.  Singh immediately reported the
25   incident to the Distribution Center Manager for the Tracy
26   facility, Troy Leiker ("Leiker").  Leiker then contacted security
27   investigator, Ron Plants ("Plants") and Yellow's Area Vice
28   President, Dan Gatta ("Gatta") regarding the incident.

Leiker also contacted the Tracy Police Department to file a
report.  Ultimately, Gatta notified Yellow's Human Resource
Manager for the Western Region, Donald Pochowski ("Pochowski").
The following day, September 8, 2003, Plants and Pochowski began
investigating the incident.  At the early stages of the
investigation, Singh refused to disclose the names of the persons
he believed to be responsible for the harassment.  However, it
was later learned that Daniel Drake ("Drake"), Roger Price
("Price"), Ed Rivera ("Rivera") and Frank Vela ("Vela") were key
actors in the alleged harassment.  During the investigation,
Singh admitted he had complained to his Union but had not
complained to Yellow directly.  Singh Depo. 98:24-99:1.  He also
asserted that he had been called names such as "rag-head,"
"Taliban," and "Camel Jockey."

Mier alleges he was likewise the target of pervasive
harassment that was sufficiently severe to alter the terms of his
employment.  For example, Mier contends that Drake would throw
four inch rolls of duct tape at him often striking him in the
head.  Mier Depo. 46:5-47:19.  Mier also avers that after leaning
over to check a trailer, Drake started calling him "buttcrack."
*Id.* 79:9-18.  Further, Price yelled and screamed at Mier on the
dock, calling him "wetback," "child molester" and "snitch."  *Id.*
423:20-424:5.

As with the other two Plaintiffs, Pruitt alleges the same
band of dock workers harassed him.  In particular, Pruitt
contends he was referred to as "nigger" on the dock and in the
break room.  Pruitt Decl. ¶ 19.
///

4

Pruitt also alleged that on one occasion, Drake, Vela and Price followed him from the parking lot to the dock in an intimidating manner, yelling at him until he reached the time clock.  Pruitt Decl. ¶ 24.

Yellow alleges it was unaware of the racial nature of the events occurring between its dock workers.  Plaintiffs do not dispute this fact but rather merely claim Yellow "must have known."  It is undisputed that upon actual notice of the nature of the alleged racial harassment, Yellow launched an in depth investigation into Plaintiffs' claims followed by stern disciplinary action against those responsible for the alleged harassment.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

///
///
///
///

1    Rule 56 also allows a court to grant summary adjudication on

2 part of a claim or defense. *See* Fed. R. Civ. P. 56(a) ("A party

3 seeking to recover upon a claim ... may ... move ... for a

4 summary judgment in the party's favor upon all or any part

5 thereof."); *see also Allstate Ins. Co. v. Madan*, 889 F. Supp.

6 374, 378-79 (C.D. Cal. 1995); *France Stone Co., Inc. v. Charter

7 Township of Monroe*, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

8    The standard that applies to a motion for summary

9 adjudication is the same as that which applies to a motion for

10 summary judgment. *See* Fed. R. Civ. P. 56(a), 56(c); *Mora v.

11 ChemTronics*, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing
> the district court of the basis for its motion, and
> identifying those portions of 'the pleadings,
> depositions, answers to interrogatories, and admissions
> on file together with the affidavits, if any,' which it
> believes demonstrate the absence of a genuine issue of
> material fact.

17 *Celotex Corp. v. Catrett*, 477 U.S. at 323 (quoting Rule 56(c)).

18    If the moving party meets its initial responsibility, the

19 burden then shifts to the opposing party to establish that a

20 genuine issue as to any material fact actually does exist.

21 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

22 585-87 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S.

23 253, 288-89 (1968).

24    In attempting to establish the existence of this factual

25 dispute, the opposing party must tender evidence of specific

26 facts in the form of affidavits, and/or admissible discovery

27 material, in support of its contention that the dispute exists.

28 Fed. R. Civ. P. 56(e).

6

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251-52 (1986); *Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers*, 971 F.2d 347, 355 (9th Cir. 1987). Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255.

///

///

///

///

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

**I.   Racial Discrimination under 42 U.S.C. § 1981**

In analyzing a Section 1981 action, the Court employs the same legal principles as those guiding a Title VII dispute. *See Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1412 (9th Cir. 1987) ("The same standards apply [to claims brought under Title VII and those brought under Section 1981], and facts sufficient to give rise to a Title VII claim are also sufficient for a Section 1981 claim.")  Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ...."  42 U.S.C. § 2000e-2(a)(1)(2005).  A person suffers disparate treatment in his employment when he or she is singled out and treated less favorably than others similarly situated on account of race. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1121 (9th Cir. 2004) (internal quotation marks omitted).

///

///

To prevail in a disparate treatment claim, a plaintiff must "prove that the employer acted with conscious intent to discriminate." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 854 (9th Cir. 2002) (aff'd 539 U.S. 90 (2003).

When a defendant moves for summary judgment, the plaintiff alleging disparate treatment may respond in one of two ways. *McGinest*, 360 F.3d at 1122; *Costa*, 299 F.3d at 855.  On one hand, a plaintiff may provide direct or circumstantial evidence "that a discriminatory reason more likely motivated the employer" to engage in disparate treatment. *McGinest*, 360 F.3d at 1122.  In the alternative, a plaintiff may seek to survive summary judgement by engaging in the *McDonnell Douglas* burden shifting analysis. *Cornwell*, 439 F.3d at 1028; *McGinest*, 360 F.3d at 1122.

Plaintiffs failed to elect the analysis under which they seek to prove their case.  Therefore, the Court will consider both of Plaintiffs' possible avenues to defeat summary judgment.

**A.   Disparate Treatment**

Defendants allege that Singh cannot make even a threshold showing of racial discrimination.  Specifically, Defendants allege that Singh was not treated differently than a similarly situated employee who does not belong to the same protected class.  In reply, Singh does not controvert Yellow's assertion. Rather, Singh points the Court to numerous out of circuit decisions discussing a "totality of the circumstances" approach to discrimination cases.

///

1  The law in this circuit, however, provides that a person

2  suffers disparate treatment in his employment when he is singled

3  out on account of race and treated less favorably than others

4  similarly situated. *Cornwell*, 439 F.3d at 1028.  As an initial

5  matter, neither Party alleges Yellow singled out any of the

6  Plaintiffs on account of race or treated them less favorably than

7  any of their peers.  In fact, Mier testifed as follows: "I have

8  never said that Yellow Freight System has discriminated against

9  me, and I haven't seen that they discriminated other people."

10 Mier Depo. 335:4-14.  In addition, Plaintiffs do not cite even

11 one example of conduct on the part of Yellow that could be

12 characterized as disparate.  Plaintiffs instead allege coworkers,

13 as opposed to Yellow management, hurled insults and engaged in

14 other harassing conduct that caused a hostile work environment.

15 Similarly, a thorough review of the Plaintiffs' Joint Separate

16 Statement of Facts fails to reveal any instance of Yellow

17 engaging in disparate treatment of Plaintiffs irrespective of

18 race.  In fact, the record is entirely void of evidence that any

19 Plaintiff was singled out or treated less favorably than any

20 other similarly situated employee.

21 The Court finds no evidence of disparate treatment of

22 Plaintiffs by Yellow.  Accordingly, Plaintiffs have failed to

23 satisfy their burden with respect to the first avenue of

24 analysis.

25 ///

26 ///

27 ///

28 ///

10

**B.   McDonnell Douglas Test**

In order to meet the McDonnell Douglas test, Plaintiffs must offer proof: (1) that each belongs to a class of persons protected by Title VII; (2) that each performed his job satisfactorily; (3) that each suffered an adverse employment action; and (4) that Yellow treated each differently than a similarly situated employee who does not belong to the same protected class. *See Cornwell,* 439 F.3d at 1028.

There is no dispute regarding whether each Plaintiff is a member of a protected class.  Similarly, it is undisputed that each Plaintiff performed his job satisfactorily.  Rather, Yellow contends that none of the Plaintiffs have offered proof that he suffered an adverse employment action.  While Yellow argues no adverse employment action has been alleged, the Court need not address this disputed issue because, as explained above, Plaintiffs have failed to offer any evidence that Yellow treated them differently than similarly situated employees.

Consequently, Plaintiffs have failed to meet their burden rendering summary judgment in favor of Yellow appropriate on this cause of action.

///
///
///
///
///
///
///

11

## II.  Hostile Work Environment

To establish a prima facie hostile work environment claim under either Title VII or Section 1981, Plaintiffs must raise a triable issue of fact as to whether (1) they were subjected to verbal or physical conduct because of their race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of Plaintiffs' employment and create an abusive work environment. *Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003) (citing *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002)).  In order to satisfy the third element of this test, Plaintiffs must show that their work environment was both subjectively and objectively hostile.  *See McGinest*, 360 F.3d at 1113.  In making this objective determination, the Court must look to all of the circumstances, including the frequency, severity, and nature of the conduct. *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005).  The required severity of the conduct varies inversely with its pervasiveness and frequency.  *McGinest*, 360 F.3d at 1113. Finally, the objective hostility of the environment must be considered "from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff."  *Id.* at 1115.

///
///
///
///
///
///

12

1        **A.   Harassment**

2

3        Plaintiffs allege that they suffered severe and pervasive

4   harassment at the hands of their coworkers.  For example, Mier

5   alleges that Drake would hit large balls of duct tape at him

6   often striking him in the head.  Mier Depo. 46:5-47:19.  Mier

7   also alleges that after leaning over to check a trailer, Drake

8   and others began calling him "buttcrack."  *Id.* 71:9-18.  Further,

9   Mier alleges Price yelled and screamed at him on the dock,

10  calling him a "wetback" and a "snitch."  *Id.* 423:20-424:1.

11       Plaintiff Singh alleges that chalk was put on top of his

12  trailer door such that, upon opening the door, the chalk would

13  shower down into his eyes and on his clothing.  Singh Depo.,

14  230:3-232:2.  Singh also avers he was referred to as "terrorist,"

15  "Saddam," "raghead," "Haji," "Bin Ladden," "Taliban," "Fiji,"

16  "camel jockey" and other racially derogatory names.  *Id.* 72:1-14.

17  In addition, he claims the lug nuts on his vehicle were loosened

18  as part of his co-workers' continuous pattern of harassment.

19       Plaintiff Pruitt alleges he was often referred to as

20  "nigger" on the dock and in the break room.  Pruitt Decl. ¶ 19.

21  Specifically, Pruitt avers that Drake referred to him as a

22  "nigger" in July or August 2003, in front of the time clock.

23  Pruitt further contends that after he complained to Larry Braga,

24  the Union Steward, about the racist comments against he and Singh

25  and others, Drake, Vela and Price met Pruitt when he arrived at

26  work surrounding him and yelling at him as he approached the

27  dock.  *Id.* ¶ 24.

28  ///

13

1   The foregoing does not represent an exhaustive list of the
2   various forms of harassment alleged by Plaintiffs.  However, it
3   is representative.  Viewing the facts in the light most favorable
4   to the non-moving party, there is scarcely a question that
5   Plaintiffs' coworkers subjected Plaintiffs to verbal or physical
6   conduct and that the conduct was unwelcome by Plaintiffs.
7   Consequently, the Court finds that, for purposes of this Motion
8   for Summary Judgment, Plaintiffs have established the first two
9   elements of a hostile work environment.

10   With respect to whether the terms and conditions of
11   Plaintiffs' employment were sufficiently altered as to create a
12   hostile work environment, the Court considers the circumstances,
13   including the frequency, severity, and nature of the conduct.
14   All three Plaintiffs allege that Drake, Vela, Price and Rivera,
15   among others, hurled insults and engaged in physical harassment
16   on a daily basis.  A daily dose of verbal and physical assaults
17   on Plaintiffs' would certainly be sufficient to have altered the
18   terms and conditions of their employment.  Accordingly, the Court
19   finds that Plaintiffs have provided sufficient evidence to
20   survive summary judgment with respect to whether Yellow's Tracy
21   facility constituted a hostile work environment.

22   While the Court has so found, Plaintiffs must go further to
23   defeat Yellow's Motion.  Specifically, Plaintiffs assert that
24   coworkers, rather than Yellow management, engaged in the
25   harassing conduct.  In fact, Plaintiffs expressly state that
26   Yellow management did not engage in any acts of harassment or
27   discrimination.  Singh Depo. 286:21-25; Mier Depo. 335:4-13.
28   ///

14

In such circumstances, employers may only be held liable for failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known. *Ellison v. Brady*, 924 F.2d 872, 881 (9th Cir. 1991) (quoting *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1515-16 (9th Cir. 1989)).

Plaintiffs do not allege that Yellow actually knew of the racial harassment. Rather, Plaintiffs merely argue that Yellow "must have known" of the racial comments because supervisors manning the towers must have overheard slurs being bellowed across the docks. Mier Depo. 309:6-17. In contrast, Yellow argues that management was not aware of any harassment motivated by race. While Yellow concedes that with 185 men on the docks at any one time, pranks and cussing are commonplace, Yellow steadfastly maintains that its supervisors never heard nor were told of any racial slurs being exchanged. Kittrell Depo. 72:1-3. For example, Yellow supervisor Steven Kittrell expressly denied hearing Drake use racially-oriented language toward Singh, and denied that anybody ever complained to him about Drake calling someone a racial name. *Id.* at 72:22-25, 80:5-18. Further, Yellow contends that with the roar of twenty-two forklifts simultaneously moving about the docks, it is difficult to hear with even remote accuracy comments made by dockworkers. *Id.* at 74:11-17.

Plaintiffs rebut the foregoing by pointing to numerous instances of non-racial harassment. Specifically, Plaintiff Mier alleges that Drake harassed him by calling him a "child molester." Mier Deop. 310:2-13.

Likewise, Singh alleges he was called a "fucking suck ass." Plf.s' Stmt. of Fact, ¶ 352. In addition, Singh alleges that Vela accused him of cheating on bills when he first began working for Yellow. *Id.* at ¶ 310.

Although Plaintiffs aver that Yellow management "must have known" of the racial slurs, they provide no evidence to support this assertion. Instead, all three Plaintiffs repeatedly and consistently allege that they complained only to union representatives as opposed to Yellow management. Singh concedes in his deposition that he "didn't report anything to Yellow management until like probably a couple of weeks before [he] left working at Yellow." Singh Depo. 98:24-99:1; *see also* Pruitt Decl. ¶ 23, 25, 31. Similarly, while Pruitt claims he made complaints to Yellow management, he confesses he does not recall any specific complaints regarding racial harassment. Pruitt Decl. ¶ 55. To the extent the Court presumes otherwise, it is undisputed that he failed to submit any formal complaint of racial harassment to Yellow management. Likewise, Mier did not file his first formal complaint alleging racial harassment until December 2003.[2] Mier Depo. 314:13-315:18.

It bears repetition that in order to proceed on a harassment cause of action under Section 1981, the harassment must be motivated by race. *See Manatt*, 339 F.3d at 798.

---

[2]On March 4, 2003, Mier verbally reported an incident involving Rivera wherein Rivera purposely rammed Mier while both were operating their fork lifts. Mier did not allege that the incident was racially motivated. In response, Yellow terminated Rivera on March 17, 2003, for ramming Mier. Ultimately, that termination was reversed by the union grievance panel. Pochowski Decl. ¶ 7.

Similarly, the obligation to take remedial steps to act does not arise absent actual or imputed notice of race discrimination. Despite the great pains taken to detail non-racial harassment by coworkers, Plaintiffs fail to point the Court to a single instance of racial insults being stated in the presence of Yellow management.  Further, Plaintiffs admittedly did not alert Yellow management to any occasion of racial harassment prior to September 2003.  Accordingly, the Court finds that Yellow management became aware of the alleged racial harassment in late 2003.  It was only then that Yellow's obligation to launch an investigation and set in motion remedial measures was triggered.

### B.   Remedial Measures

Having established that the Plaintiffs endured harassment at the hands of their co-workers and that Yellow became aware of the racial nature of the harassment in late 2003, Yellow may only avoid liability by undertaking remedial measures "reasonably calculated to end the harassment." *Ellison*, 924 F.2d at 882; *see also Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1482 (9th Cir. 1997).  "The reasonableness of the remedy depends on its ability to: (1) stop harassment by the person who engaged in the harassment; and (2) persuade potential harassers to refrain from unlawful conduct.  *Nichols*, 256 F.3d at 875 (internal citations and quotations omitted).  Remedial measures must include some form of disciplinary action which must be proportionate to the seriousness of the offense.  *McGinest*, 360 F.3d at 1120.

1    Yellow argues that upon learning of the existence of racial
2    harassment at its Tracy facility, it undertook prompt remedial
3    measures calculated to arrest the harassment.  Plaintiffs reply
4    that there is a reasonable inference from a review of the
5    totality of the circumstances that Yellow has failed to redress
6    the problem.  On the contrary to Plaintiffs' assertion, the Court
7    finds the record replete with evidence that Yellow has, in fact,
8    taken stern measures to stem the harassment.
9        For instance, upon notice by Singh that his lug nuts had
10   been loosened in the parking lot, Yellow promptly launched an in
11   depth investigation.  Yellow management including Area Vice
12   President Dan Gatta, Tracy facility Distribution Center Manager
13   Troy Leiker, Security Investigator Ron Plants, and Human Resource
14   Manager for the Western Region Don Pochowski all became involved
15   in the investigation within one day of Singh's complaint.
16   Def.'s Stmt. Undisp. Facts ¶¶ 82-88.  Plants had security review
17   the video surveillance for evidence of the perpetrators but was
18   unsuccessful in identifying who loosened the lug nuts.  Within a
19   week of the incident, Pochowski traveled from his home office in
20   Phoenix, Arizona to conduct an independent investigation into
21   Singh's complaint.  *Id.* ¶ 113.  Pochowski, along with other
22   management officials, conducted sessions with each suspected
23   offender separately to counsel him with regard to his behavior.
24   *Id.* ¶¶ 128-131.  Pochowski followed up the sessions by sending
25   letters to all four individuals summarizing the verbal counseling
26   previously conducted.  *Id.* ¶ 141.  In addition, Yellow instituted
27   Performance Management and Respect training which was initially
28   conducted in October 2003.  *Id.* ¶ 115.

18

Yellow further instituted a policy of disseminating respect messages during all pre-shift meetings. *Id.* ¶ 136. Moreover, immediately in response to the incident regarding the loosening of Singh's lug nuts, Yellow increased the security guard service at the Tracy facility to twenty-four hours per day. *Id.* ¶ 114.

From October to December 2003, other employees, including Plaintiff Mier, came forward alleging harassment. *Id.* 137-140, 144-151. As a result of complaints made by Mier against Drake, Yellow terminated Drake's employment on December 30, 2003. *Id.* ¶ 152. Pursuant to the terms of the CBA, however, Drake grieved his termination and was reinstated by the grievance panel. *Id.* ¶ 31-42, 157. Over the next eighteen months, Yellow terminated Drake three additional times for various infractions.[3]   In addition, Yellow has painted the restroom walls black in an effort to curtail incidents of graffiti. *Id.* ¶ 187. Yellow has further created a Respect Committee which meets on a regular basis and promulgates programs such as the series of respect messages presented at all pre-shift meetings. *Id.* ¶ 20-26.

Yellow took extreme action to send a message that harassment was intolerable. *McGinest*, 360 F.3d 1121 (citing *Snell v. Suffolk County*, 782 F.2d 1094, 1104-05 (2d Cir. 1986)). Yellow emphasized through its terminations of Drake and written warnings to Rivera, Vela and Price as well as its institution of respect messages at all pre-shift meetings that serious punishment would result for harassing behavior. *See Nichols*, 256 F.3d at 876.

---

[3]Despite Drake's repeated written and verbal warnings, each of his terminations was reversed by the grievance panel. *Id.* ¶ 158-166.

1  Yellow further had management check workplace areas such as the
2  bulletin board and the restrooms on a regular basis to ensure
3  that graffiti and other written harassment did not recur.  *Id.*
4  Clearly, Yellow took the harassment seriously and implemented
5  measures reasonably suited to curtail the problem.  This is
6  further evidenced by the fact that Plaintiffs do not adduce a
7  single instance of continuing harassment.

8       The Supreme Court has clarified that Section 1981, like
9  Title VII, is not a "general civility code." *Faragher v. City of*
10 *Boca Raton*, 524 U.S. 775, 788 (1998).  "Simple teasing, offhand
11 comments, and isolated incidents (unless extremely serious) will
12 not amount to discriminatory changes in the 'terms and conditions
13 of employment.'"  *Id.* (internal citation omitted); *see also*
14 *Jordan v. Clark*, 847 F.2d 1368, 1374-75 (9th Cir. 1988) (finding
15 no hostile work environment where "off-color" jokes were told in
16 workplace).  There is no question that the dock workers engage in
17 offhand comments and teasing of one another, however, to the
18 extent that conduct became unlawful, Yellow took prompt measures
19 to address it shielding themselves from liability.  Consequently,
20 the Court finds that summary judgment in favor of Defendants on
21 this claim is appropriate and hereby granted.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

20

## III. Retaliation

In order to set forth a prima facie case of retaliation, the employee must show that: (1) he engaged in a protected activity, such as the filing of a complaint alleging racial discrimination; (2) the employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1188 (9th Cir. 2006) (citations omitted). If the employee meets the elements of his prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. *Id.* However, the employee bears the ultimate burden of demonstrating that the proffered reason is pretextual. *Id.*

Neither Party disputes, and the Court is in accord, that Plaintiffs did ultimately engage in the protected activity of advising Yellow of the racial nature of the alleged harassment establishing the first element of this claim. The issue thus becomes whether Plaintiffs can establish that retaliatory adverse employment action was taken against them as a result of that protected activity.

An adverse employment action has been held to mean "any adverse treatment that is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). The aforementioned standard covers "lateral transfers, unfavorable job references, and work schedule changes," but does not cover every offensive statement made by co-workers. *Id.*

21

1    Defendants argue that Plaintiff Singh has failed to show any
2    adverse employment action was taken against him by Yellow.  The
3    Court agrees.  The record is patent that Plaintiff Singh did not
4    suffer any adverse employment action either in advance of his
5    complaints or after.  In fact, Plaintiff Singh does not allege,
6    nor does the record show, any discipline imposed against him
7    whatsoever.  Singh made his complaint to Yellow management on
8    September 7, 2003, and since that date has not returned to work.
9    Singh Depo. 55:23-56:1; 244:2-4; 276:17-22.  Singh is considered
10   totally disabled yet remains employed by Yellow.  Singh Depo.
11   53:19-23; 172:20-24.  Yellow contacted Singh in an effort to
12   encourage him to return to work, however, Singh refused that
13   offer.  Given the foregoing and in the absence of any showing
14   whatsoever of an adverse employment action, the Court finds that
15   Plaintiff Singh's claim for retaliation fails.

16   Unlike Plaintiff Singh, there is evidence in the record that
17   Plaintiffs Mier and Pruitt were disciplined since the time they
18   complained to Yellow management.  While neither suffered any cut
19   in pay or have been demoted, each has received various written
20   and verbal warnings.  For example, on two different occasions
21   since 2004, Yellow has issued warning letters to Mier for being
22   tardy.  Pochowski Decl. ¶ 7.  On May 22, 2004, Yellow issued a
23   verbal warning to Mier for failure to follow the proper procedure
24   for loading express shipments.  *Id.*  In addition, Mier received
25   written warnings for failing to scan a product into a trailer
26   resulting in hazardous materials not being identified or loaded
27   properly; driving a fork lift while off the clock; and eating in
28   the break room without informing supervisors.

Plaintiff Pruitt was similarly written up on several occasions for being tardy; sleeping on his forklift during work hours; failing to log off his mobile data terminal during his lunch period; and was suspended for intentionally striking another employee with his elbow. *Id.*

Plaintiffs contend these adverse performance memoranda and like discipline constitute retaliatory employment action in violation of Section 1981. In *Ray*, the Ninth Circuit recognized that "*undeserved* performance ratings, *if proven*, would constitute 'adverse employment decisions.'" 217 F.3d at 1241 (emphasis added). Plaintiffs have the burden of demonstrating that Defendants' reasons are pretextual by "either directly persuading the Court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Yartzoff v. Thomas*, 809 F.2d 1371, 1377 (9th Cir. 1987). Thus, granting summary judgment is appropriate when evidence of discriminatory intent is completely lacking. *Id.* Here, neither Plaintiff Mier nor Plaintiff Pruitt assert the legitimate reasons proffered by Defendants were pretextual. In fact, they do not dispute having engaged in the underlying conduct giving rise to the discipline. Accordingly, the Court finds that Mier and Pruitt have failed to carry their burden in establishing that the proffered legitimate business reasons motivating the disciplinary action taken are pretext.

///

///

///

1   Even presuming, however, that Plaintiffs could raise a prima

2   facie case, their retaliation claim would nonetheless fail as

3   they cannot establish a causal link between the protected

4   activity and the later discipline.  Causation may be inferred

5   from circumstantial evidence, such as the employer's knowledge of

6   Plaintiffs' protected activity and the proximity in time between

7   the protected action and the allegedly retaliatory employment

8   activity.  *Id.* at 1376.  Cases have consistently held that the

9   temporal proximity must be "very close" when temporal proximity

10  is accepted as a means to infer a causal connection.  *Clark*

11  *County Sch. Dist. v. Breeden*, 532 U.S. § 268, 273 (2001) (citing

12  cases for the proposition that a three-month and four-month time

13  lapse is insufficient to infer causation).

14  Plaintiffs Mier and Pruitt argue that a causal connection

15  exists between the protected activity and the adverse employment

16  action.  It is undisputed that Mier first informed Yellow about

17  racial harassment in the workplace in October 2003 during Mier's

18  conversation with human resource manager, Pochowski.  *See* Pl.

19  Pruitt's Resp. to Def.'s Stmt. of Undisp. Facts ¶ 119.  It is

20  further undisputed that the first adverse employment action

21  against Mier did not occur until April 2004.  *See* Pl. Mier's

22  Resp. to Def.'s Stmt. of Undisp. Facts ¶ 198.  Thus, a five-month

23  gap existed between Mier's protected activity and the first

24  instance of adverse employment action.  A five-month gap does not

25  constitute a "very close" temporal proximity to infer a causal

26  connection.  Like Mier, Pruitt did not suffer any adverse

27  employment action until April 2004.

28  ///

24

While Pruitt alleges he was openly harassed in June or July 2003, Defendants contend the first instance of harassment occurred in January 2004.  The Court need not resolve this dispute because pursuant to either version of events, a five to eight month gap is insufficient temporally to give rise to a causal nexus.

Accordingly, the Plaintiffs fail as a matter of law to assert a retaliation claim.  Specifically, Plaintiffs' failed to establish that the proffered legitimate business reasons for the discipline imposed on Mier and Pruitt was pretextual.  In addition, even had Plaintiffs carried that burden, they have failed to show that there was a causal nexus between the discipline taken against them and their protected speech.

## 4.   State Law Claims

Plaintiffs have alleged violations of state law pursuant to the California Fair Employment and Housing Act.  The district courts may decline to exercise supplemental jurisdiction over state claims if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367.  As is clearly set forth above, the Court has concluded that none of Plaintiffs' federal causes of action survive summary judgment.  Consequently, the Court elects not to exercise supplemental jurisdiction and, hereby, dismisses the remaining state law claims without prejudice.

///

///

///

25

**CONCLUSION**

    For the reasons set forth fully above, Plaintiffs claims for violations of Section 1981 are summarily adjudicated in favor of Defendants.  Plaintiffs remaining state law claims pursuant to the California Fair Employment and Housing Act are dismissed without prejudice.

    Counsel are cautioned that future violations of this Court's Local Rules and/or the Pretrial Scheduling Order will result in sanctions to the offending party.

    IT IS SO ORDERED.

DATED: October 11, 2006


_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE